UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAYED HESSAM, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>DOLLAR TREE STORES, INC.,<br><br>Defendants. | **Case No.:**<br><br>**CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Sayed Hessam ("Named Plaintiff"), individually and on behalf of others similarly situated ("Plaintiffs"), alleges as follows:

## INTRODUCTION

1.      This Class and Collective Action, brought by Named Plaintiff on behalf of himself and other Store Managers of Dollar Tree Stores, Inc. ("Dollar Tree" or "Defendant"), challenges Dollar Tree's practices and policies of misclassifying Plaintiffs and other similarly-situated Store Managers as "exempt" employees, and not paying them all overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and implementing regulations.

2.      Dollar Tree requires its Store Managers to spend nearly all of their time performing the same menial tasks performed by the company's non-exempt, hourly workers, for example stocking shelves, unloading merchandise, operating cash registers, helping customers, and cleaning.

3.      In actuality, Store Managers lack any independent authority, and exercise little to no discretion over their job functions. Instead, the true managerial authority over the operation of the stores rests primarily with the District Managers, each of whom is assigned to

manage approximately three to nine stores in a localized geographic region. The District Managers who perform traditional managerial functions for the stores have authority over hiring and firing, employee reviews and compensation, the flow of merchandise, the physical setup of the stores, expenses for continued operation of the store, and the work schedule for every single employee at the store, including Store Managers.

4.     Upon information and belief, Defendant nevertheless chooses to classify the Store Managers as employees who are "exempt" from receiving overtime compensation, in turn compensating them as salaried employees – by paying them the same rate of pay each week regardless of the amount of hours that they worked.

5.     As a consequence, Defendant saves millions of dollars because they pay the Store Managers a fixed weekly rate regardless of the number of hours worked, and do not have to hire additional store associates, cashiers, stockers, and other positions that would invariably increase labor costs.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.*

7.     This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and the Defendant and Plaintiffs are subject to personal jurisdiction in this district.

9.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

10.     Upon information and belief, at all relevant times hereto, Dollar Tree has had gross revenues in excess of $500,000.

## PARTIES

11.     Plaintiff Sayed Hessam[1] is a resident of New York State who was employed by Dollar Tree as a Store Manager in New York from 2016 to 2017.

12.     During Plaintiff Hessam's employment, Defendant failed to compensate him for all hours worked and failed to pay him appropriate overtime compensation when he worked greater than 40 hours in a given work week, because they improperly classified him as exempt from overtime.

13.     At all relevant times, Plaintiff Hessam and other similarly situated workers were "employees" under the NYLL and FLSA.

14.     Defendant Dollar Tree operates and owns chains of discount variety stores that sell items at modest to discount prices and are self-proclaimed as "North America's leading operator of discount variety stores…".

15.     Defendant Dollar Tree operates thousands of stores throughout the U.S., including 584 new stores that were opened in 2016, and its sales exceeded $20 billion for the 2016 fiscal year.

16.     Defendant operates dozens, if not hundreds, of locations in New York, including store locations in New York, Brooklyn, Garden City, Carle Place, Floral Park, Elmont, Jamaica,

---

[1] Plaintiff Hessam consents in writing to be a participant in the FLSA portion of this action and has attached his executed Consent to Join form to this Complaint.

Flushing, among others. Each store is operated under specific uniform guidelines set by Defendant.

17.   At all relevant times during the statutory period covered by this Complaint, Defendant has transacted business within the State of New York, including within this District.

18.   Upon information and belief Defendant has employed hundreds of Store Managers within New York, and significantly more across the country.

19.   At all relevant times hereto, Dollar Tree was an "employer" of Plaintiffs and other similarly-situated employees, within the meaning of the NYLL and FLSA.

20.   At all relevant times hereto, Dollar Tree was an "enterprise" engaged in commerce or in the production of goods for commerce, within the meaning of the NYLL and FLSA.

21.   At all relevant times hereto, Dollar Tree has had gross revenues in excess of $500,000.

## FACTS

22.   Dollar Tree is a nationwide variety discount store chain that misclassifies Store Managers as exempt employees, even though their jobs are virtually identical to non-exempt employees, in order to circumvent the FLSA and the NYLL and avoid paying the Store Managers overtime.

23.   Defendant's demands of Store Managers also allow Defendant to avoid hiring and paying other workers such as cashiers, stockers, cleaners, and other positions – who perform that same tasks as the Store Manager.

24.   Dollar Tree maintains its discount prices by cutting its labor costs.  Indeed, during its hours of operation, an average Dollar Tree store has only two or three employees working at

one time – one or two cashiers, a part-time stocker, and either a Store Manager and/or an assistant manager.

25.     Store Managers, assistant managers, cashiers, and stockers all wear the identical required uniform – traditionally a green polo shirt with the Dollar Tree logo, which all employees are required to purchase from Defendant for a price of $37.00 per shirt.

26.     Not only are the uniforms for these positions indistinguishable, their job duties and responsibilities are nearly indistinguishable.

27.     Yet assistant managers, stockers, and cashiers are classified as non-exempt and paid overtime compensation, Store Managers are misclassified as exempt and are not paid overtime above five hours per week.

28.     Plaintiff Hessam was hired at an annual rate of $55,000 per year.

29.     During Plaintiff Hessam's employment, he received paychecks that demonstrated he received 40 hours per week of regular pay, and 5 hours per week of overtime pay, regardless of the number of hours he actually worked in a given workweek.

30.     Indeed, during Plaintiff Hessam's employment, Defendant failed to compensate him for all hours worked and failed to pay him appropriate overtime compensation when he worked greater than 40 hours in a given workweek, because they improperly classified him as exempt from overtime.

31.     Upon information and belief, other Store Managers also received annual salaries, whereby their weekly pay was fixed and did not change, regardless of the number of hours they worked in a given workweek.

**The Job Duties and Responsibilities Of A Store Manager**

32.     Store Managers are "managers" in name only. Store Managers at Defendant's locations do not engage in any substantive management and have no meaningful discretion in the operation of the store.  Indeed, the nature of their job is identical to that of hourly employees, like cashiers, stockers, and assistant managers.

33.     Store Managers spend over 90% of their time on tasks such as unloading merchandise, stocking shelves, operating cash registers, cleaning the store, setting up product displays (according to specific instruction from the District Managers) and helping customers.

34.     Store Managers are placed on the weekly schedule for 45 hours alongside the hourly employees. Store Managers are officially scheduled to work five days per week. However, Store Managers regularly work more than 50 or 60 hours per week as they are forced to work additional hours in order to keep labor costs low, without additional compensation.

35.     District Managers ensure that fewer cashiers and other workers are scheduled to work, in order to maintain profits at the given stores. District Managers are incentivized through their compensation packages to ensure that Stores Managers work as many hours as possible performing the daily tasks of the store like stocking, shelving, cleaning, and working the cash register.

36.     Store Managers have no discretion regarding the flow of regular inventory to the store or the layout of such products in the store, which is exclusively controlled by District Managers and Defendant.

37.     Store Managers, such as Named Plaintiff Hessam, typically arrived before 6:30 a.m., to open the store in accordance with the hours set by the District Manager or Defendant. Then, a cashier would arrive around 7:00 a.m. The Store Manager and one cashier would typically work from 7:00 a.m. until 2:30 or 3:00 p.m. before the scheduled shift change.

6

However, despite the shift change for the cashiers, the Store Manager would typically be required to work at least until 5:00 p.m., but often had to work longer, including covering for cashiers, stockers, or the assistant manager.

38.     Between 2:30 or 3:00 p.m. and close of the store around 10:00 p.m., the Store Manager would typically work along with one cashier and an assistant manager to perform all the other daily tasks or tasks assigned by the District Manager.

39.     Store Managers, such as Named Plaintiff Hessam, do not receive overtime compensation above 45 hours in a given work week.  However, Store Managers regularly work approximately 50 or more hours per week.  These additional work hours were not recorded and Store Managers were not compensated for them.

40.     Store Managers have no actual "managerial" authority over (i) the hourly employees such as the cashiers, stockers, and assistant managers or (ii) the way the store was run. Indeed, Store Managers could hardly exercise any independent discretion in their job duties, and any semblance of actual authority was purely perfunctory and superficial in nature. For example, nearly all decisions of any consequence required approval from District Managers, including but not limited to those pertaining to hiring workers, firing workers, disciplining workers, scheduling workers, granting workers personal or medical leave, setting product prices, product layout with the store, and purchasing items necessary for store maintenance.

41.     For example, District Managers maintained the sole ultimate discretion regarding scheduling of workers. Store Managers themselves lacked the authority to implement a schedule on their own, and instead would receive explicit directives from the District Managers who dictated to Store Managers during weekly conference calls. For Named Plaintiff Hessam, these calls typically occurred Monday afternoons between 10:00 a.m. and 2:00 p.m., wherein he was

told who to schedule, when to schedule them, and how many total hours that employee could perform work.

42. Store Managers may not schedule overtime work for hourly employees. Any requests for overtime must be approved in advance by the District Managers.

43. Store Managers do not have the authority to hire, fire, grant promotions, give raises, or impose disciplinary measures. These decisions are made by the District Managers or Defendant's corporate representatives – traditionally human resources.

44. Similarly, Store Managers could not approve personal leave or medical leave for any employees. It was a policy and practice that only District Managers, Regional Managers, or Defendant's corporate representative could approve such changes to the store work schedule.

45. All Dollar Tree store employees, including Store Managers, stockers, assistant managers, and cashiers, are required to wear Dollar Tree uniforms, which traditionally consisted of a green polo collared shirt. District Managers were not required to wear the uniform and regularly wore business attire.

46. Dollar Tree required Store Managers, assistant managers, stockers, and cashiers to purchase the required uniform from Dollar Tree for more than $35 per shirt and did not reimburse employees for uniform cleaning or laundering of such uniforms.

47. Store Managers reviewed hourly employees' timecards for weekly payroll purposes, but the ultimate approval and verification before any wages were paid was performed by the District Manager, who provided authorization and verification. Store Managers, like Plaintiff Hessam, did not have authority to ensure payment of wages to the hourly employees.

48. Store Managers have no authority to alter the design of the store or the location of inventory on the shelves or the endcaps. The configuration of each store, its inventory, its

endcaps, and the special buys section is exclusively directed by the District Managers, Regional Managers, or Defendant's corporate representative.

49.   Store Managers have no discretion relating to the safety and security of the stores. Any security issues, such as shoplifting, theft, or government inspections, must be reported promptly to the District Manager, Regional Manager, or Defendant's corporate representative. Store Managers have no authority relating to store security, as such discretion is reserved for the District Managers.

50.   Store Managers cannot set prices of items in the store, or make substantive decisions to help facilitate the sales of specific products at the store location.

51.   Store Managers are substantially limited in the supplies they could order for the store location. For example, Plaintiff Hessam could only order a limited supply of inexpensive items such as toilet paper, cleaning supplies, air fresheners, and bags, but could not order more pricey items like buckets, vacuums, or extra bags without approval of the District Manager. Plaintiff Hessam was punished when he ordered extra shopping bags for customer purchases and was required to pay back $20 in petty cash that he used for such purchases because the District Manager did not approve it.

52.   In total, Store Managers have no greater authority than hourly employees.  The real discretion relating to the management of any specific Dollar Tree store location is exercised exclusively at levels above the Store Managers – by District Managers and Regional Managers.

53.   Store Managers paychecks reflect payment for 45 hours per week, regardless of the actual number of hours worked, and do not receive overtime compensation for more than 5 hours per week. Therefore, in effect, Store Managers are paid a flat salary.

## PLAINTIFF

54.     Mr. Hessam was employed by Dollar Tree from January 2016 through February 2017.  He started as a trainee store manager and was promoted to Store Manager at the Canarsie Plaza, Brooklyn, New York location.  On occasions Mr. Hessam was required to perform tasks and responsibilities at other locations including locations in Queens and Brooklyn.

55.     As a Store Manager, Mr. Hessam was paid for only his first 45 hours of work, including five hours of overtime compensation, but did not receive any additional pay above 45 hours when he worked greater than 45 hours in a given work week. In effect, Mr. Hessam was paid a flat weekly salary, regardless of the amount of hours that he worked.

56.     As a result, Mr. Hessam was regularly missing hourly compensation. Typically, Mr. Hessam would work between 70 and 90 hours in a given work week, but his paychecks would only reflect five hours of overtime compensation.

57.     Mr. Hessam was not permitted to leave the store location until the assistant managers arrived; if they were late or unable to work for any reason, Mr. Hessam had to cover their shifts for no additional pay.

58.     Mr. Hessam often worked his days off and the shifts of hourly workers in order to avoid termination and satisfy the requirements of his District Manager.

59.     Mr. Hessam typically and regularly spent more than 90% of his time performing tasks such as unloading merchandise, stocking shelves, operating the cash register, cleaning the store, setting up product displays and/or end caps (according to specific instruction from the District Managers) and customer service.

60.     Mr. Hessam worked with hourly store employees – such as cashiers, stockers and assistant managers – who performed these same exact tasks side by side with him, except those employees were paid hourly wages and compensated for overtime while Mr. Hessam was not.

61.     Mr. Hessam had no managerial authority over the operations of the store or the hourly employees.  Mr. Hessam had no right or authority to hire, fire, promote or discipline any of the hourly employees.  All such decisions, including any compensation issues, were handled exclusively by the District Manager of Defendant's Human Resources department.

62.     Mr. Hessam had no authority to mark down prices or change the physical layout of the store.

63.     On days when Mr. Hessam was not scheduled to work, the assistant managers and cashiers did the same work that Mr. Hessam had done.  Even when Mr. Hessam was working, the nature of his job was indistinguishable from that of the hourly, non-exempt employees.

## COLLECTIVE ACTION ALLEGATIONS

64.     Plaintiffs bring this action as a collective action to recover unpaid wages, including unpaid overtime compensation, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b), on behalf of a class of current and former Store Managers employed by Defendant during the statutory period covered by this Complaint.

65.     Plaintiffs bring this suit on behalf of the following similarly situated persons:

> All current and former Store Managers who have worked for Defendant within the statutory period and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) ("Collective Class").

66.     Plaintiffs allege on behalf of the Collective Class that they are entitled to unpaid wages from Defendant for overtime work for which they did not receive overtime premium pay, liquidated damages, interest, attorney's fees, and costs.

67.     The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

68.     Defendant has engaged in a continuing and willful violation of the FLSA.

69.     Plaintiffs are unaware of the names and the capacities of those individuals and entities that may be "employers" under the Labor Law and the FLSA, but will seek leave to amend this Complaint once their identities become known to Plaintiffs.

70.     Upon information and belief, Plaintiffs allege that at all relevant times other individuals including officers, directors, employees, agents, representatives, or alter egos of Defendant had requisite authority over the policies and procedures that related to the work performed by Store Managers and the pay structure for Store Managers.

71.     There are numerous similarly-situated current and former Store Managers of Dollar Tree who have worked over 40 hours a week without appropriate overtime pay, in violation of the FLSA.   These Store Managers all had similar, if not identical, job responsibilities.   These Store Managers all spent over 90% of their time performing non-managerial tasks.

72.     These similarly-situated current and former Store Managers would benefit greatly from the issuance of Court-supervised notice and the opportunity to join in the lawsuit pursuant to 28 U.S.C. § 216(b).

73.     These similarly-situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.  As such, notice should be sent to past and present Store Managers of Dollar Tree.

## CLASS ACTION ALLEGATIONS

74.     Plaintiffs further bring this action as a state-wide class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and a class of individuals employed by Defendant within the State of New York to recover unpaid wages, including premium overtime compensation for all hours worked in excess of 40 per workweek and missing hours, as well as uniform and maintenance pay pursuant to the NYLL.

75.     Plaintiffs bring overtime and unpaid wage claims in this suit on behalf of themselves and a class of similarly situated persons composed of:

>       All current and former Store Managers who have worked for Defendant in the State of New York during the statutory period covered by this Complaint (the "NY Class").

76.     Plaintiffs allege on behalf of the NY Class that Defendant violated the NYLL by (i) failing to pay them overtime at the rate of one and one-half times the employee's regular salary for all hours worked in excess of 40 hours in any given workweek; and (ii) failing to compensate Plaintiffs for all hours worked and for all wages earned.

77.     Plaintiff also alleges class-wide violations under 12 NYCRR § 142-3.5 for the failure to reimburse all employees for the cost of a uniform, as well as maintenance and laundering. Upon information and belief, this policy and practice applied to all employees of Defendant at all New York locations, including stockers, cashiers, Store Managers, and assistant managers.

13

78. The claims brought pursuant to the NYLL may be pursued by all similarly-situated persons who do not opt out of the NY Class pursuant to Fed. R. Civ. P. 23.

79. The members of each of the NY Class are so numerous that joinder of all members is impracticable. While the exact number of the members of the NY Class is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are hundreds of individuals in the NY Class.

80. Upon information and belief, the NY Class consists of hundreds of Store Managers.

81. Common questions of law and fact, the answers to which will advance this litigation, exist as to the NY Class and predominate over any questions only affecting them individually. Indeed, there are few if any purely individual issues in this case. The questions of law and fact that are common to Plaintiffs and all members of the NY Class include, but are not limited to, the following:

(a) whether Store Managers are improperly classified as "exempt" employees under the NYLL;

(b) whether Plaintiffs and the members of NY Class were expected to and/or were mandated to regularly work hours without compensation in violation of the NYLL;

(c) whether Defendant has failed to pay Plaintiffs and members of the NY Class all overtime compensation due to them for all hours worked in excess of 40 hours per week;

(d) whether it was Dollar Tree's policy or practice not to provide Plaintiffs and the NY Class spread-of-hours pay as required by the NYLL;

(e)     whether Plaintiffs and members of the NY Class are entitled to unpaid wages, damages, interest, attorney's fees, and costs.

82.     The claims of Plaintiff Hassem are typical of the claims of the members of the classes he seeks to represent.  Plaintiffs and the members of the class work, or have worked, for Dollar Tree as Store Managers and are, or were, subject to the same compensation policies and practices, including not being compensated for all hours worked and/or not being paid overtime compensation.

83.     Plaintiff Hessam will fairly and adequately protect the interests of the class as his interests are in alignment with those of the members of the NY Class.  He has no interests adverse to the class he seek to represent, and he has retained competent and experienced counsel.

84.     Defendant has acted or has refused to act on grounds generally applicable to the NY Class, thereby making final injunctive relief or corresponding declaratory relief with respect to the NY Class as a whole appropriate.

85.     The class action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.  Common issues of law and fact predominate over any individual issues.  The damages suffered by individual members of the NY Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the NY Class to individually seek redress for the wrongs done to them.

**FIRST CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT OVERTIME VIOLATIONS**

86.     At all relevant times, Dollar Tree has had gross revenues in excess of $500,000.

87.     At all relevant times, Dollar Tree has been and continues to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

88.     At all relevant times, Defendant has employed, and/or continues to employ, Plaintiff Hessam and each of the Collective Class Members within the meaning of the FLSA.

89.     At all relevant times, Defendant had a willful policy and practice of misclassifying Plaintiffs and similarly situated Store Managers as "exempt" in order to avoid paying them for all hours worked or appropriate overtime compensation for all hours worked in excess of 40 hours per workweek.

90.     Plaintiff Hessam typically and regularly worked 70 to 90 hours per week, but was typically and regularly only paid 40 hours of work at his regular rate of pay and 5 hours at an overtime rate. But Plaintiff Hessam was typically and regularly not compensated at all for between 25 and 45 overtime hours per week.

91.     As a result of the Defendant's willful failure to compensate its employees, including Plaintiffs and the members of the Nationwide Collective Class, for all hours worked and at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek, Dollar Tree has violated and, continues to violate, the FLSA, 29 U.S.C. §§ 201, *et seq.*

92.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

93.     Due to the Defendant's FLSA violations, Plaintiff Hessam, on behalf of himself and the members of the Collective Class, are entitled to recover from the Defendant:

compensation for unpaid wages, liquidated damages, interest, and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
## NEW YORK LABOR LAW – OVERTIME VIOLATIONS

94.    Plaintiff Hessam was employed by Dollar Tree within the meaning of the NYLL.

95.    At all relevant times, Defendant had a willful policy and practice of misclassifying Plaintiff Hessam and similarly situated Store Managers as "exempt" in order to avoid paying them for all hours worked or appropriate overtime compensation for all hours worked in excess of 40 hours per workweek.

96.    As a result of the Defendant's willful failure to compensate its employees, including Plaintiff Hessam and the members of the NY Class, for all hours worked and at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek, Dollar Tree has violated and, continues to violate, Labor Law § 650, *et seq.*, and the supporting New York State Department of Labor Regulations.

97.    Due to the Defendant's violations of the NYLL, Plaintiffs and the members of the NY Class are entitled to recover from the Defendant: compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to N.Y. Lab. Law Article 19 § 663.

## THIRD CLAIM FOR RELIEF
## NEW YORK LABOR LAW – UNPAID WAGES VIOLATIONS

98.    Plaintiffs, on behalf of themselves and all members of the NY Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

99.     Defendant has failed to pay Plaintiffs and the members of the NY Class for all hours worked in a given work week. For example, Plaintff Hessam was regularly and typically not paid between 25 and 45 hours in a given work week.

100.     Defendant's failure to pay Plaintiff Hessam and the members of the NY Class is a violation of N.Y. Lab. Law Article 19 §§ 191, 193, 198, and the supporting New York State Department of Labor Regulations, including 12 NYCRR Part 142 et seq.

101.     Defendants have also violated NYLL § 193 by required Store Managers, like Plaintiff Hessam, to pay for expenses for the store location without reimbursement, such as for store bags and other items that were necessary to the performance of their job duties and responsibilities.

102.     Due to Defendant's violation of the NYLL, Plaintiff Hessam and the members of the NY Class are entitled to recover from Defendant: an award of damages for their unpaid compensation, liquidated damages, interest, reasonable attorneys' fees and costs, and disbursements of the action, pursuant to the N. Y. Lab. Law § 198.

### FOURTH CLAIM FOR RELIEF
### NEW YORK LABOR LAW – UNIFORM VIOLATIONS

103.     Pursuant to 12 NYCRR § 142-3.5, an employer must pay for the cost of a uniform as well as the cost of cleaning and laundering such uniform.

104.     Plaintiff Hessam was required to pay for his uniform at a rate of greater than $35 per shirt, and Defendant did not compensate him for such purchase.

105.     Defendant also failed to launder or maintain the required uniform, and failed to provide Plaintiff Hessam with additional compensation for that laundering and maintenance.

106.    Store Managers, cashiers, stockers, and assistant managers were required to pay for their uniforms and did not receive additional compensation for the laundering and maintenance of their uniforms.

107.    Due to Defendant's violation of the NYLL, Plaintiff Hessam and the members of the NY Class are entitled to recover from Defendant: an award of damages for their unpaid compensation; liquidated damages; reasonable attorneys' fees and costs; and disbursements of the action, pursuant to the N. Y. Lab. Law § 198 and the implementing regulations promulgated under 12 NYCRR Part 142, including § 3.5.


**FIFTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**

108.    Plaintiffs, on behalf of themselves and all NY Class members, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

109.    This Count is pled in the alternative to Plaintiffs' Second, Third, and Fourth Claims for Relief.

110.    Plaintiff Hessam and the NY Class were not paid and continue not to be paid wages for all time that they worked.

111.    Defendant retained the benefit of the Plaintiff's and the NY Class members' uncompensated work under circumstances which rendered it inequitable and unjust for Defendant to retain such benefits without paying for their value.

112.    Consequently, Defendant was unjustly enriched by requiring Plaintiffs and members of the NY Class to work for hours for which they were not compensated.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and/or on behalf of themselves and all other similarly situated members of the Nationwide Collective Class, and members of the NY Class, respectfully request that this Court grant the following relief:

A.      Designation of this action as a collective action on behalf of the Nationwide Collective Class, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

B.      Designation of the action as a class action under Fed. R. Civ. P. 23 on behalf of the NY Class;

C.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

D.      An injunction against the Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

E.      An injunction against the Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from taking any retaliatory actions against Plaintiffs, the Nationwide Collective Class and the members of the NY Class;

F.      An award of unpaid overtime compensation to Plaintiffs, the Collective Action members and the members of the NY Class;

G.      An award to Plaintiffs and the members of the NY Class of spread of hours pay and unpaid wages under regulations promulgated under the NYLL;

H.      An award of liquidated damages to Plaintiffs and members of the Classes;

I.       An award of prejudgment and post-judgment interest to Plaintiff and members of the Classes;

J.       An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiffs and members of the Classes; and

K.       Such other and further relief as this Court deems just and proper.


## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.


Dated: December 7, 2017

                                                        Respectfully submitted,


                                                        _____
                                                        **LEEDS BROWN LAW, P.C.**
                                                        Michael A. Tompkins
                                                        Brett R. Cohen
                                                        1 Old Country Road, Suite 347
                                                        Carle Place, New York 11514
                                                        www.leedsbrownlaw.com

                                                        *Attorneys for the Plaintiff Hessam and the Putative Class & Collective*